The opinion of the court was delivered by ■
Brewer, J.:
The question in this case is one of exemption under the pension laws of the United States. The facts are these: To garnishee proceedings against the defendant in error, certain bankers garnished answered in these words:
“In the month of April, Mr. White came into the bank with pension checks or drafts to the amount of twenty-eight hundred and twenty-six dollars and eighty-two cents, ($2,826.82.) He indorsed the same and passed them to me, and I gave him or his account credit for the said sum. We took and bought the cheeks or drafts in the usual course of banking, and after passing the amount of the face of the checks to White’s credit, sent the same to our correspondent at Kansas City or St. Louis for collection and returns as usual. Mr. White has checked out all of the said sum but four hun *320 ■dred and fifty dollars; which sum is now due him from us, being the balance of the proceeds of said checks, which we ■obtained from the defendant in the manner stated. The checks or drafts we obtained from him were pension drafts, and were given to him, as we understood, in payment of a pension obtained by him from the government. The amount yet due him from us is a part of that which he obtained upon these pension checks or drafts, whatever they are called.”
The garnishee proceedings were commenced on May 16th? and the answer made September 17th. Upon this answer, the district court held the property exempt, and discharged the garnishee; and upon this ruling, plaintiffs in error, plaintiffs below, come to this court. The exemption was sustained under the following section in the general pension act, U. S. Revised Statutes, p. 931, §4747:
“No sum of money due or to become due to any pensioner shall be liable to attachment, levy, or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or an officer or agent thereof, or in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner.”
*321 1‘money”when exempt. *322 ' pension, when not exempt. *320 Was this ruling of the court correct? The first question is as to the scope of this section of the United States statutes. Does it create an exemption of moneys in the hands of a pensioner, or simply protect such money in course of transmission to him? The difference is obvious and vast. If the exemption attaches to the money absolutely, then practically the state exemption law is amended by a federal statute. Counsel for plaintiffs in error earnestly contend that the federal government has no power thus to amend a state exemption law; that it cannot provide that money in the hands of one citizen of Kansas shall not be subject to seizure for the payment of his debts, when a like sum of money in the hands of every ■other citizen of the state is by the state law subject to such seizure. Their argument would be entitled to serious consideration if it appeared that such is the intent and scope of the federal statute. But such is not the meaning of that statute; it does not attempt to invade the domain of stale *321 legislation in respect to exemptions; its simple and obvious purpose is, to protect the donation , . 1 * . while in transit to the pensioner. Its language is not, “no^money in the hands of a pensioner,” or “no pension money,” but “no sum of money due or to become due to any pensioner.” The protection is to an undelivered sum •of money. This, which is implied in the first words of the section, is made more clear by its after language, for it prohibits seizure whether this sum of money due or to become due remains with^the pension office or an officer or agent thereof, or in course of transmission to the pensioner entitled thereto. To guard against any abuse or destruction, it thus specifies the various positions which money due or to become due can occupy, and in effect declares that pension money shall not be interrupted on its way to the pensioner. The last clause of the section, which reads, “but shall inure wholly to the benefit of such pensioner,” is qualified by and must be read in the light of the preceding words of the section. It is comprehensive language, but it is only language strengthening and making more plain the intention of the preceding words. It applies to money due or to become due, and not to money paid and in possession.' Nowhere in the section is there reference to pension money in the bands of the pensioner. It does not purport to exempt money in such hands from the operation of state laws, either those of taxation, or the ordinary statutes concerning exemptions and indebtedness. It is doubtless true that such statute is to be liberally construed, and so construed that the pensioner shall acquire full possession of his pension, free from any interception directly or indirectly in the course of its transit. Now turning to the facts of this case, and it is evidentathat¡the defendant had acquired full and absolute control of his'pension ; he had sold it to the bank; it had been passed to his general account, and hehad already used mostof it. He had not simply deposited the drafts for collection; but he had sold them to the bank, and the bank was his debtor for a balance upon his general account at the time of these proceedings. We have been referred to the case of Eckert v. *322 McKee, 9 Bush, 355, in which the supreme court of Kentucky reached a conclusion different from that expressed by us in this opinion, and construed the statute as exempting the-money itself, even in the hands of the pensioner, and declared such an exemption within the power of congress. It is very likely that, on the facts as stated in the opinion in that case, even with the views we entertain of the scope of the-federal statute, we should have decided the case in the same-way; for it would seem that though the pensioner had indorsed the check, and sent it through an agent who had received the money from the bank, that the money had not in fact reached her, so that, in a liberal construction, it might be said that the pension was still in the course of transmission;: but we cannot agree with all that is said in the opinion. The section, as we understand it, simply protects pension money in transit; and here the facts are that the transit was ended,. the drafts had been sold, and the bank was a debtor in the balance of a general account to the- ° defendant, and hence the bank was liable as garnishee. See the case of Kellogg v. Waite, 12 Allen, 529, in which the supreme court of Massachusetts, while not deciding the question before us, uses language impliedly sustaining the-views we have expressed. See also Webb v. Holt, S. C. Iowa, March 24, 1882, 14 Cent. L. J. 318.
The judgment-of the district court will be reversed, and the case remanded for further'proceedings in accordance with the views herein expressed.
All the Justices concurring.